In re MERRY.

(District Court, D. Maine. January 4, 1913.)

No. 292.

1. BANKRUPTCY (§ 400*)—SCHEDULES—AMENDMENTS SO AS TO ENLARGE EXEMPTIONS.

The bankruptcy court does not favor the extension by amendment of exemptions of the bankrupt where such extension will work solely for the benefit of a creditor, though the court as a rule exercises great liberality in permitting amendments.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 671–675; Dec. Dig. § 400.*]

2. BANKRUPTCY (§ 400*)—SCHEDULES—AMENDMENTS SO AS TO ENLARGE EXEMPTIONS.

Where a bankrupt did not assert a claim for exemption under Rev. St. Me. c. 83, § 64, subsec. 7, of a horse bought from a seller retaining title by unrecorded notes, an amendment of the bankrupt's schedules so as to enlarge his exemptions by including the horse, and thereby benefit the seller, and prevent general creditors from holding the horse by attachment, would not be granted, since under Bankr. Act July 1, 1898, c. 541, § 47a (2), 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), as amended in 1910 (Act June 25, 1910, c. 412, § 8, 36 Stat. 840 [U. S. Comp. St. Supp. 1911, p. 1500]), the trustee, as to all property in the custody or coming into the custody of the bankruptcy court, is vested with the rights and remedies of a creditor holding a lien by legal or equitable proceedings thereon.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 671–675; Dec. Dig. § 400.*]

In the matter of the bankruptcy of Edward C. Merry, a bankrupt. Decision of the referee denying to the bankrupt right to amend his schedules so as to enlarge his exemptions, and question certified to the District Court. Affirmed.

Barrett Potter, of Brunswick, Me., for bankrupt.

Clement F. Robinson, of Portland, Me., for trustee in bankruptcy.

HALE, District Judge. The referee certifies to this court a question relating to the right of the bankrupt to amend his schedules so as to enlarge the exemptions beyond those claimed by him in his schedules. In his first examination before the referee, the bankrupt testified:

"I have made no claim for exemptions, being a single man 34 years of age, with nothing to claim as exempt, unless my clothing."

[1] He now claims that he inadvertently omitted to claim an exemption for "one black horse worth less than three hundred dollars, heretofore used by the bankrupt in his grocery business, an exemption under Revised Statutes of Maine, c. 83, § 64, subsec. 7; said

horse being the same on which, according to the bankrupt's schedule of assets, one I. R. Morrill holds one or more Holmes notes." It appears in testimony that the horse in question originally belonged to Morrill, who sold it to Merry, retaining the title, however, by certain Holmes notes which he did not record; that the horse is the only horse Merry had any claim on; that he owned no other animals of the kind mentioned in the Revised Statutes of Maine, c. 83, § 64, subsec. 7, relating to exemptions. Under that section, the horse was exempt from attachment and execution. The Holmes notes were not recorded as provided in Revised Statutes of Maine, c. 113, § 5. Hence, they were valid only as between the original parties thereto. In his schedules Merry did not call the attention of the court to the fact that the horse was exempt. He says he did not know the horse was exempt, and his counsel did not tell him the horse was exempt; that, when he discovered the fact of the exemption, he made the petition for amendment. At the time his amendment was brought before the court it became evident that the exemption would work no benefit to the bankrupt or his family, but would at once give the horse to Morrill upon his Holmes notes. The courts in bankruptcy as a rule exercise great liberality in permitting amendments; and, when the matter was first brought to my attention, I was under the impression that, under the general rule of granting amendments, I ought to allow this extension of the right of exemption from attachment and execution. But it is clear that bankruptcy courts do not favor the extension of exemptions by amendment, when such extension works solely for the benefit of a creditor, and not for the benefit of the bankrupt and his family. In Moran v. King, 111 Fed. 730, 733, 49 C. C. A. 578, the Circuit Court of Appeals of the Fourth Circuit had before it a case where the bankrupt attempted to enlarge his claim for exemption for the purpose of carrying out an agreement with certain creditors; and the court held that to grant the bankrupt's petition would not be consistent with the objects of the law, or in furtherance of the administration of his estate under the Bankruptcy Law.

[2] In the case now before me, it is unnecessary to discuss whether the failure to assert his exemption in his schedule was a technical waiver on the part of the bankrupt. When the bankrupt did assert his claim for the exemption of the horse in question, it was apparent that such assertion would inure entirely to the benefit of the creditor, and would be of no advantage to himself or his family. After a careful examination of the law, I am satisfied that in refusing to allow the amendment the referee ruled in accordance with the decisions of the courts. Moran v. King, supra; Mitchell v. Mitchell (D. C.) 147 Fed. 280; Re Schuller (D. C.) 108 Fed. 591; Re Kaufman (D. C.) 142 Fed. 898; Re Maxson (D. C.) 170 Fed. 356; Collier on Bankruptcy (9th Ed.) p. 192, and notes, p. 659, etc., and notes.

The learned counsel for the bankrupt, and for the creditor Morrill, now makes the further contention that prior to bankruptcy Merry's creditors had no interest in the Morrill horse, and could not acquire any interest by attachment, execution, or by other equitable or legal proceeding, whether the notes were recorded or not, and that the

trustee now has no such interest, inasmuch as he has taken the property in the same plight in which the bankrupt held it at the date of bankruptcy, and that it necessarily follows that nothing the bankrupt puts in or leaves out of his schedules can deprive Morrill of his vested rights under his notes. The learned counsel has argued this proposition with great clearness and force, but, upon a careful examination of the case, it is clear that the only thing which prevented general creditors from holding the Morrill horse by attachment was the fact that the horse was exempt under the state law. If the bankrupt asserted his right of exemption, an attaching creditor could not hold the horse. If the bankrupt did not assert his right of exemption, a creditor could hold the horse under an attachment. Collier, p. 192, supra. It appears in testimony that the bankrupt did not assert his right to his exemption when an attachment was actually made upon the horse. He did not assert his right of exemption in his schedules in bankruptcy. When he did assert his right of exemption, it became apparent that such assertion inured to the benefit of Morrill, the holder of the Holmes notes, and of him alone.

By the amendment of 1910, § 47a (2), as to all property in the custody, or coming into the custody of the bankruptcy court, trustees in bankruptcy shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceeding thereon. Act July 1, 1898, c. 541, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 [U. S. Comp. St. Supp. 1911, p. 1500]). This amendment makes the trustee's position somewhat stronger; but, even before the amendment, there is strong reason to hold that the result would have been the same in reference to the trustee's right to assert title to this property.

The decision of the referee is affirmed.